UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

'04 OCT 25 PM 3: 54

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

OCT 2 5 2004

CHARLES SHARRIEF, as next    )
friend of CHRISTOPHER KEYS, )
a minor,    )
   )
     Plaintiff,    )
   )
vs.    )    Civil Action No. CV-04-S-2679-NE
   )
THE ALABAMA HIGH SCHOOL )
ATHLETIC ASSOCIATION )
("AHSAA"), *et al.,*    )
   )
     Defendants.    )

## MEMORANDUM OPINION

This action is before the court on plaintiffs' motion filed pursuant to Federal
Rule of Civil Procedure 59(e),[1] asking the court to alter, amend, or vacate the order
entered on October 1, 2004, granting defendants' motion to dismiss in part, and
denying plaintiffs' motion for a temporary restraining order and preliminary
injunction. As grounds for the motion, plaintiffs argue that their state law claim that
the decision of defendant Alabama High School Athletic Association ("AHSAA")
declaring Christopher Keys ineligible to participate in interscholastic sports during
the present, 2004-2005 school year was the product of fraud, collusion, and

---

[1] "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of
the judgment." Fed. R. Civ. P. 59(e).

20

arbitrariness supports the entry of a temporary restraining order and preliminary injunction, and the court restricted plaintiffs' equal protection claim to racial grounds, rather than based upon Keys's status as a "blue-chip athlete." Defendants oppose the motion, contending plaintiffs' state law claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In the alternative, defendants argue that plaintiffs have failed to satisfy the prerequisites for entry of a temporary restraining order and preliminary injunction with respect to the state law claim. To the extent that the court agrees that plaintiffs' state law claim should be addressed and the prior order amended, plaintiffs' motion will be granted.

Under Alabama law, it is well settled that there are "very narrow grounds on which a court should assume jurisdiction" to review a decision of the AHSAA: namely, only where there is clear and convincing evidence of fraud, collusion, or arbitrariness. *Alabama High School Athletic Association v. Medders*, 456 So. 2d 284, 286-87 (Ala. 1984). *See also Alabama High School Athletic Association v. Rose*, 446 So. 2d 1 (Ala. 1984); *Scott v. Kilpatrick*, 237 So. 2d 652 (Ala. 1970). In *Rose,* the Court emphasized:

> [T]he burden on the challenger to overcome the presumption favoring the Association's absolute authority in the conduct of its own affairs is a heavy one. . . . [T]he court's jurisdiction in such matters is invoked

2

when, and only when, the averments of fraud, collusion, or arbitrariness are supported by clear and convincing evidence; and the trial court's acceptance of jurisdiction will be affirmed only where its order makes an unequivocal factual finding of one or more of those narrow, restrictive grounds, founded upon clear and convincing evidence.

446 So. 2d at 5. Accordingly, although defendants frame the alleged deficiency in plaintiffs' complaint as failing to state a claim upon which relief can be granted, defendants' true argument is that the court lacks subject matter jurisdiction to review the decision of the AHSAA declaring Keys ineligible to participate in interscholastic sports during the 2004-2005 school year. Such a challenge is proper under Federal Rule of Civil Procedure 12(b)(1), and defendants asserted that ground in their motion to dismiss.[2]

Federal Rule of Civil Procedure 12(b)(1) provides:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:  (1) lack of jurisdiction over the subject matter . . . .

When ruling upon a Rule 12(b)(1) motion, the court must first determine whether the moving party is mounting a "facial" or "factual" attack on the court's subject matter jurisdiction. The former Fifth Circuit explained the difference, and the resulting effect on the district court's framework of analysis, in *Williamson v. Tucker*,

---

[2]Doc. no. 19 (Response in Opposition to Motion for Temporary Restraining Order and Preliminary Injunction, and Motion to Dismiss), at 7.

645 F.2d 404 (5th Cir. 1981), saying:[3]

A motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), can be based on the lack of jurisdiction *on the face of the complaint*. If so, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised — the court must consider the allegations in the plaintiff's complaint as true. *E.g., Spector v. L Q Motor Inns, Inc.*, 517 F.2d 278, 281 (5th Cir. 1975); *Herpich v. Wallace*, 430 F.2d 792, 802 (5th Cir. 1970). *But the two motions are treated quite differently when a matter outside the complaint is the basis of the attack.* Rule 12(b) provides that a motion to dismiss for failure to state a claim will be automatically converted into a motion for summary judgment (Rule 56) if the court considers matters outside the pleadings. This provides an additional safeguard for the plaintiff, for, in addition to having all his allegations taken as true, the trial court cannot grant the motion unless there is no genuine issue of material fact. This protection is not, however, provided the plaintiff who faces dismissal for lack of subject matter jurisdiction. As the Court of Appeals for the Third Circuit has explained:

The facial attack (on subject matter jurisdiction) does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction — its very power to hear the case — there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Williamson*, 645 F.2d at 412-13 (quoting *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977)) (emphasis added); *see also Barnett v. Okeechobee Hospital*, No. 00-13222, 2002 WL 261950, at *3 (11th Cir. Feb. 25, 2002); *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (*per curiam*).

Here, defendants attack the factual basis of plaintiffs' claim that the decision of the AHSAA ruling Keys ineligible to participate in high school athletics was the product of fraud, collusion, or arbitrariness. During the hearing conducted on September 23rd and 24th, the court received evidence relevant to the state law claim, sufficient to evaluate its jurisdiction.

Despite plaintiffs' assertions to the contrary, this case is factually distinguishable from *Alabama High School Athletic Association v. Rose*, 446 So. 2d 1 (Ala. 1984). In *Rose*, the minor plaintiff's family moved into the Emma Sansom High School zone during September of 1982, and he participated in that school's football program during the 1982-1983 school year, after having been ruled eligible for such participation by the AHSAA. The following school year, however, he was ruled ineligible to participate. The trial court found that:

> [d]uring the 1982-83 school year, and during the summer months following the same, the Executive Director of the defendant AHSAA received repeated telephone calls from three local high school coaches

5

in an effort to convince the Executive Director of the defendant AHSAA that the plaintiff was ineligible for athletic participation; that based upon the assertion of the coaches, *and without making further investigation or inquiry*, the Executive Director of AHSAA was first contacted by Emma Sansom High School and by the plaintiff concerning his eligibility, the Executive Director announced that he had made his decision that the plaintiff was ineligible, and although said Executive Director allowed the plaintiff to journey to Montgomery to discuss the matter, announced that he was 98% sure that his decision would be to declare the plaintiff ineligible. *Without further investigation*, the defendant AHSAA, through its Executive Director, issued a ruling on August 3, 1983, that the plaintiff was ineligible to participate as a student athlete at Emma Sansom High School for the 1983-1984 school year, on the grounds that the plaintiff's family move into the Emma Sansom school zone in September, 1982, was not a bona fide move or change of residence because the plaintiff's parents did not remain there for six months or more after the move.

*Id.* at 2 (emphasis supplied).

The principal of Emma Sansom High School then appealed the Executive Director's determination to the Sixth District Athletic Board.

[P]rior to the appeal hearing . . ., which was to be a de novo appeal hearing, the Executive Director . . . *contacted personally* two of the four members of the Sixth District appeal board, *discussed the plaintiff's case with them, and received a commitment from said two Board members that they considered the plaintiff ineligible and that they would so rule after the hearing, said decision being made by said two Board members before any evidence had been presented to them at the hearing.* The hearing before the Sixth District Athletic Board lasted approximately 45 minutes. A third member of the Sixth District Athletic Board was not present when the hearing began but came into the meeting after some 30 minutes of testimony had expired, and yet the third member of the Athletic Board sat in deliberation in the plaintiff's case with the other Board members and joined with the other Board

6

members in a unanimous decision against the plaintiff and his eligibility.

*Id.* at 2-3 (emphasis supplied).

Based on the foregoing, the trial court found that "[t]he acts and decisions of the defendant AHSAA, its Executive Director, and the Sixth District Athletic Board were the result of collusion and arbitrariness," and granted a preliminary injunction. *Id.* at 3. The Supreme Court of Alabama concluded that because the trial court expressly found collusion, and that the finding was supported by the record, its jurisdiction was properly invoked, and the preliminary injunction was an appropriate exercise of discretion. *Id.* at 5.

In *Rose,* the trial court's findings focused on the Executive Director's failure to investigate claims made by competing coaches regarding the plaintiff's eligibility to compete in interscholastic athletics, as well as evidence that the Executive Director, after making an ill-informed determination, improperly influenced the appellate District Athletic Board to uphold his decision. No such evidence is present here.

AHSAA's Executive Director Dan Washburn received a copy of a Louisiana newspaper article from Tommy Henry, the Commissioner of the Louisiana High School Athletic Association, on July 13, 2004, noting Keys's ineligibility to compete in Louisiana, and his intention to play football during his senior year for North

Jackson High School in Stevenson, Alabama.   Receipt of the article prompted Washburn to discuss the issue of Keys's eligibility with North Jackson High School's football coach Mark Rose, and with Frank Stevens, North Jackson's principal and athletic director.   At Stevens's request, Coach Rose obtained documentation to support Keys's eligibility, and presented the paperwork to Washburn in AHSAA's Montgomery office.   After reviewing the information presented, Washburn stated that, in his opinion, Keys was *not* eligible to compete in AHSAA-sanctioned, interscholastic athletics.

Notwithstanding Washburn's verbal ruling, Stevens then submitted a written request for an *official — i.e.,* written — ruling of eligibility on July 30, 2004.   In support, Stevens submitted further documentation, in the form of:  letters from the principal, assistant principal, and football coach of Port Barre High School; the Louisiana court order transferring custody of Keys to Mr. and Mrs. Sharrief; and Keys's school records and birth certificate.   Washburn again determined Keys to be ineligible, writing, on August 2, 2004:

> I am in receipt of your letter of July 30, 2004 requesting an official ruling concerning the athletic eligibility of a transfer student into your school from Louisiana.  Christopher Donnie Keys is transferring from Port Barre High School in Port Barre, Louisiana.  I received the enclosures which included letters from Mr. Duplechain, Principal, Port Barre High School, Mr. Jerome Robinson, Assistant Principal, and the football coach, Mr. Donnie Perron.  They all stated their confidence in

8

this student to perform both academically and athletically. You also enclose a court order from the Saint Landry Parish Clerk of Court ordering legal custody to Charles and Millie Sharrief. Mr. and Mrs. Sharrief reside in the North Jackson school district. You also enclosed copies of Chris Keys [sic] permanent record and his birth certificate.

You may find on page 32 of the 2004-2005 Handbook, Section 16: "Any student who is under temporary suspension or whose character or conduct is such as to reflect discredit upon the school is not eligible. A student's attendance, attitude and classroom efforts must be acceptable to the school in which the student is enrolled. A transfer student must be in good standing with the student's previous school." In Mr. William Duplechain's letter, Mr. Duplechain states: "Christopher Keys was suspended indefinitely and recommended for expulsion for possessing a controlled dangerous substance governed by UCDSL.[4] Subsequently he was expelled by the superintendent for a period of 24 calendar months in accordance with Louisiana State Law." Additional information in Mr. Duplechain's letter states: "Because of his expulsion, he is athletically ineligible at Port Barre High School for the 2004-2005 school year and the 2005-2006 school year."

Based on the above information, Chris Keys is ineligible to participate in interscholastic athletics at any member school of the Alabama High School Athletic Association. This ruling is based on the fact that he is not in good standing with his previous school, Port Barre High School, having been expelled and ruled not eligible to participate in interscholastic athletics.

In addition, Chris Keys is also ruled ineligible under the Transfer Rule. You will find on page 30 of the 2004-2005 Handbook under the Transfer Rule, Custody and legal guardianship: "Custody or legal guardianship assigned to anyone (including relatives) will not establish immediate athletic eligibility. Note: No. (1) If a student transfers to another school zone to live with an appointed guardian without a bona fide move into that school zone by the parents, that student will be ineligible under the Transfer Rule. No. 2 under Note, If a student has

---

[4]Uniform Controlled Dangerous Substances Law.

9

been declared a "ward of the state" and placed by the Department of Human Resources (DHR), that student would meet the Transfer Rule requirement in the school zone where the student has been placed." The enclosure received in your letter reveals there has been a court order signed by the district judge in Louisiana which honors the requests of the parents and the guardian for a transfer of legal custody. This change of custody is not acceptable for immediate athletic eligibility as stated in the rule above.[5]

Washburn's ruling then was appealed to the Eighth District Athletic Board and, ultimately, to the Central Board of Control. Unlike *Rose*, there is no evidence that Washburn interfered in the process, or improperly influenced the members' decisions. The mere fact that Washburn participated in the hearing before the Central Board of Control does not lead to the conclusion that the process was contaminated by fraud, collusion, or arbitrariness. Moreover, in contrast to *Rose*, Washburn's decision that Keys was ineligible to participate in interscholastic athletics was based on a full investigation of the facts.

Plaintiffs also contend that two individuals who coach rivals of North Jackson High School's football team "attempt[ed] to get the Executive Director to declare Keys ineligible."[6] At most, and, again, in contrast to *Rose,* the evidence presented at the hearing suggests only that the coaches brought the issue of Keys's eligibility to Washburn's attention.

---

[5]Defendants' Ex. 3.

[6]Doc. no. 17 (Motion to Alter, Amend or Vacate), at 2.

10

For all of the foregoing reasons, the court concludes that it lacks subject matter jurisdiction to review AHSAA's decision,[7] and defendants' motion to dismiss plaintiff's state law claim is due to be granted. Accordingly, plaintiffs' motion for a temporary restraining order and preliminary injunction based upon the state law claim also is due to be denied.

Plaintiffs' remaining arguments relate to their claim under 42 U.S.C. § 1983, for denial of equal protection of the laws as guaranteed by the Fourteenth Amendment by AHSAA and its Executive Director, Dan Washburn, in the application of AHSAA's eligibility rules. In the memorandum opinion entered on October 1, 2004, the court focused on plaintiffs' claim that Keys was denied equal protection based upon his race, and found that plaintiffs had not shown that they were likely to prevail on the merits of this claim because they had not demonstrated that Washburn and the AHSAA acted with discriminatory intent because of Keys's race.[8]  Plaintiffs also contend, however, that Keys is in a "class of one[, a] 'blue chip African American nationally renowned football player,'" and that there was no rational basis for

---

[7]As stated during the hearing, the court is troubled by the AHSAA's seemingly inconsistent eligibility ruling with respect to John Doe.  AHSAA apparently misapplied its rules pertaining to custody, and whether John Doe was in "good standing," suspended, or expelled from his previous school remains an open question.  Even so, according to *Rose*, the focus of the inquiry is whether *Keys* was denied the right to an impartial, unbiased decision, and the court cannot conclude that he was.  Although John Doe appears to have been the beneficiary of some level of "arbitrariness," or just plain error, in AHSAA's decisionmaking, that fact does not change the result for Keys.

[8]*See* doc. no. 13 (Memorandum Opinion, entered on Oct. 1, 2004), at 48-49.

11

AHSAA's determination that Keys was ineligible to play football, while finding John Doe eligible. Even so, plaintiffs still have not presented evidence that AHSAA *intentionally* treated Keys differently than John Doe. Without such evidence, plaintiffs have not established that they are likely to succeed on the merits of their equal protection claim, whether based upon race, or some other status. As such, they have not demonstrated entitlement to the extraordinary remedies of a temporary restraining order or preliminary injunction.[9]

DONE this **25**th day of October, 2004.

_____
United States District Judge

---

[9]Plaintiffs also make the conclusory statement that the Jackson County School District's practice of allowing students who have been assigned to alternative schools to participate in interscholastic sports, with AHSAA's concurrence, demonstrates that defendants intentionally discriminated against Keys. Keys attended an alternative school in Louisiana after having been expelled from Port Barre High School. The minimal evidence adduced during the hearing on this issue indicated that students who attended alternative schools generally were not "suspended" (which would render a student ineligible to participate in interscholastic athletics under AHSAA rule 16) from their regular schools, but rather were reassigned to alternative schools. Whether this practice is employed to maintain the athletic eligibility of certain students is not a matter before the court.